Good morning, and may it please the Court. My name is Dexter Pierce, and I am representing the petitioner in this case, Mustafa Tanin. I'd like to reserve two minutes of my time for rebuttal. Please watch the clock. Thank you. Before I begin, I do want to note that we just learned this morning that Mr. Tanin is no longer in the country. In fact, the government has deported him to the very country from which he is seeking asylum from, notwithstanding his meritorious case. Does that deprive—I don't think that deprives us of jurisdiction to hear the issue. That's correct. The issue—there's no mootness issue there. I mean, we could, I suppose, if we grant relief, order the government to bring him back, right? That's correct. Okay. So, the record in this case compels only one conclusion, and that is that Mr. Tanin is entitled to the relief he seeks in this case—a grant of asylum, withholding of removal, and cat relief. Does this all turn on whether the BIA considered the fear of future prosecution based upon his affiliation with the United States? Is that really the key issue here? Not necessarily. Did they consider that, if that is the issue? Did the BIA consider fear of future prosecution? Fear of future prosecution. The BIA did consider fear of future prosecution. Based on his affiliation with the United States. No. They did not consider it based on that protected ground. What is that ground? I didn't see—there were some sites in your briefs on that point, but it didn't say that it was political opinion, imputed political opinion, religious persecution. There's some language about how it's a fear that he would be seen as an infidel, which sounds like religious persecution. So did anywhere in the briefing, did he identify what the particular claim was? I don't know if it's drawn out explicitly in the briefing, but it is membership in a particular group. So your argument is not political opinion or imputed political opinion. You're saying that he fears being persecuted for membership in a particular social group. And what is that social group? So that social group is the affiliation or the perceived affiliation with the United States and the United States military. So it's persons who are Afghanistan military who are perceived as being affiliated with the United States military? Did you characterize it in any way in the briefing? You say he worked as an English translator on behalf of the U.S. government, but in fact he never did. There's nothing in the record indicating he worked as an English translator on behalf of the U.S. government, is there? So that may have been unclear in the record. What he did is he was invited to the U.S. for English training. So he was trained in the United States, but he wasn't working on their behalf as an English translator. I believe that's correct. So how would you describe his claim on that ground that wasn't considered? So again, it's membership in a particular social group, and that group is the affiliation with the United States or the United States military. So it's anyone who's affiliated with the United States military is the particular social group? I wouldn't say it's that broadly. I think it is unique to his Afghanistan status. And while this court has not considered the issue, the oracle opinion, which admittedly is the Seventh Circuit, is helpful and instructful in this case. They accepted the BIA's findings that this is a protected group. And he tried to raise this on the appeal on the second time, and the BIA refused to consider it. Is that right? Is it raised anywhere? I just want to know where it's raised because I don't see the words particular social group appearing anywhere. So he did raise it in appeal, but his counsel also raised it in his closing argument at the second hearing, and they submitted it in a pre-hearing brief that was submitted to the immigration judge. And what are the exact words? Does it say anything about a particular social group that he's persecuted on account of being in a particular social group, that social group being, I guess, Afghanistan military who are associated with U.S. military? Give me one moment, Your Honor. So it's not spelled out in the sense that it's particular social group, but I'm looking at the record on AR-181. I think this is what you referenced as well when you said it's a fear that the opinion would be imputed on him if he were to return to Afghanistan. So that's a political opinion, but then he goes on to say he would be seen as an infidel having been associated with Western culture, and that's persecution on the basis of religion. In other words, that he had converted from being a Muslim to, or he was no longer an adherent of the Islamic faith. Sorry, I jumped ahead there in the briefing, but it's a couple lines before that. Where he is framing it as a political aspect, but his affiliation with the Afghan government, particularly his training here in the United States. So he's presented this argument. Is it political opinion, or is it a particular social group? I don't think they're mutually exclusive. Okay, but I don't see the words particular social group. If it's a political opinion, what is the political opinion that would be imputed to him? So the political aspect of this would be his association and his acceptance of Western ideology. Is that a political opinion? So you're saying that the political opinion that would be imputed on him is he accepted Western ideology, and by that, what do you mean? What is Western ideology? So I don't think it's necessary to spell that out. I think what the concern is the Taliban is associating him with this Western ideology. Whatever that may be, it's that the Taliban is perceiving this connection here based on his connection with the United States, his time spent in the training, his role as an English teacher. Counselor, the problem I'm having based on your interchange with Judge Akut is I'm not sure this argument was fully exhausted before the BIA. It's a little bit murky as to what his argument was before the board. I think I'm beginning to gain a better insight into why the board didn't specifically address this issue. So I think it's understandable that the record is not the clearest, but the idea that it wasn't preserved or exhausted, I don't believe that's correct. Well, that's the question. I mean, based on your answers to Judge Akut's question, do you maintain that the argument was exhausted? Otherwise, we don't have jurisdiction to review it. Absolutely, I agree that it was exhausted. He brought these issues to the BIA. Which issues? I mean, I've heard two separate grounds under the Refugee Act, membership in a particularized group and imputed political opinion, but which is it? Both? And if so, where do we look in the record to see that clearly framed so that the board understood that that was the argument he was making? Well, again, I don't think they're mutually exclusive, so I think both is correct. We're looking at 181. We see that he's tying it to a political opinion, but if we look in his pre-hearing brief that he submits, and that is AR-203-205, that is when he is citing the Oracle case and connecting it to the facts of that case, which is the membership in the protected group. So it was presented to the BIA. It was presented to the immigration judge as well in the pre-hearing brief. So is there any evidence in the record that the Taliban were persecuting him on account of imputed political opinion or particularized social group? The only thing I saw relevant to the Taliban, other than the initial attack, which was while he was still in the military in Afghanistan, hadn't been in the United States, was a letter saying, request your brother who's a teacher in the military academy that he should leave his job. But he wasn't a teacher in the U.S. military academy. He was only a teacher in the Afghanistan military academy. So what's the evidence that there was an imputed political opinion or particular social group? So I think there are three things we can look at in the record. And that's the timing of the letter. It demanded that he quit his job and return. And it was his job that took him to the United States. So I don't think it's completely accurate to say his job was a military teacher in the Afghan academy. Is there any reference to the United States? I didn't see any that was associated with the Taliban attacks. Was there any reference to the United States or the West? Not in the letter. The letter demands that he quit his job and return to Afghanistan. So that's implying that he's no longer there. I think the second point is also the timing of the letter. It was sent shortly after he came to the United States. And then I think the context of the kidnapping and the torture of his brother, where they're demanding information. Well, we don't know that was Taliban because the letter says he was kidnapped by unknown people. So that was the first hearing. The second hearing, the immigration judge found that it was corroborated and that it was the Taliban. So additional letters were submitted to the record. Do you have a cite to that? Because I didn't see that. Yes, ma'am. I saw that there was testimony that he was attacked, that he personally was attacked, but not that it was anything to do with the Taliban. Sorry, I am out of time. I can answer your question. Yes, please do. So it's AR-129, and that's where the immigration judge is finding their opinion that the letter and the kidnapping was corroborated, that it was the Taliban. Okay, I'll check that. I took you over your time.  Thank you, Your Honor. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. My name is Linda Chang on behalf of the U.S. Attorney General. In this case, the record does not compel reversal of the agency's adverse credibility finding, which is first and foremost dispositive of this petitioner's case. However, before going into that significant omission, which led to the adverse credibility finding, I'll pivot over to the issue that we've been discussing with respect to petitioner's morphine claim of a particular social group. It's important to distinguish what he has actually claimed before the IJ, the immigration judge, and what he attempts to bring in on appeal and through other later briefings that was not presented before the immigration court, in which case it was not exhausted, as the Board finds. Here, petitioner attempts to conflate his Afghan military service with his alleged affiliation with the U.S. military, and Your Honor is correct that there is nothing in the record that substantiates that he was affiliated or working for the U.S. military at any point. He came here for training, and at some point, he then left the— He came to the United States and trained on a military base. He did. He did. And I think it's—isn't it fair to assume that our government paid for that? I am not sure how it was paid for. However, he left training, went AWOL, and immigration officials later apprehended him. Who did he go AWOL from? The Afghan military. That is who he is a member of. That's who he has always been a member of. He's never been a member of the U.S. military or corroborated this claim that was brought on appeal to the Board that he had somehow worked for the U.S. military at some point. I think the real question is, did he preserve this in a way for us to be able to review it? Would you agree that's, in essence, the legal issue? That is a very important question, and in this case, he has not preserved that issue because there is nothing in his testimony, there is nothing in the record evidence that ever substantiates his claim of any affiliation with the U.S. military. Well, there's a couple of different issues. One is whether any error in not addressing a claim about his relationship with the U.S., whether it would be harmless error because there's no evidence in the record. The other question, though, which I think Judge Boo is asking is, did he exhaust an argument that he was being persecuted by the Taliban on account of something having to do with the United States, whether it's an imputed political opinion of some sort, or whether he was a member of a particular social group, Afghani military, who is affiliated with the United States, or some other basis. So he points in his briefing to some snippets from the record. None of them spell out what his argument is. So my question is, was that particular asylum claim exhausted? And then we can talk about, even if it was, was it harmless for the BIA not to address it? No, his claim, whatever it may be as it continues to morph, was not exhausted. Even today he has presented a different claim than what he presented before the agency. This idea of acceptance of Western ideology was not fleshed out before the immigration judge. There was no evidence of that. And so that is now something that he claims today, which is different than this claim of affiliation with the U.S. military, which was not exhausted, importantly. So is there a claim of, is that a protected ground, affiliation with the United States? How would that be characterized? So he does say in several places that he has a fear of persecution based on his affiliation with the United States. Does that qualify as a protected ground? Now he mentions this fear in later briefing. He does not present it in his testimony or in the record of evidence that was presented to the immigration judge at either his first merits hearing or his second merits hearing or in the asylum application that he filed. So after all these different opportunities, he then files a brief to the board on appeal alleging that he worked as a translator for the U.S. military, which is not substantiated. And I think opposing counsel has stepped away from the idea of him actually working in that capacity today. So there is no evidence in the record that he worked as an English translator, which was in his specific appeal brief to the BIA, is that right? Correct. And even in that appeal brief, if you read the language, he acknowledges that he has never brought this up before for fear of sensitive information or security purposes. So there is acknowledgment that he did not raise this previously, which then would indicate that it is not exhausted and the board properly did not review it because the immigration judge did not have the chance to do it in the first instance, which again brings us to today where this court also lacks jurisdiction to review a claim that is unexhausted. Do you agree that the fact that Mr. Tannen is no longer in the country doesn't affect our jurisdiction over his petition? That's correct. Mr. Tannen was removed pursuant to the denial of his motion for a stay of removal, and this court can continue reviewing his petition for review. If Your Honors don't have any further questions, we rely on the reasons stated today and in our briefs for a denial of the petition for review. Thank you. Thank you. So just a couple quick points here. First, this was not harmless error. If this information is considered and the BIA properly considers it, that establishes past persecution. That establishes a well-founded fear of future persecution. What is the evidence in the record? You cite the IJ opinion on AR-129. Is there anything else in the record which says he was being persecuted on account of either political opinion imputed regarding Western ideology or that he was being persecuted by the Taliban on account of being a part of a particular social group? What other evidence can you point me to? Again, I think that's the letter in the record, the timing, the content of that, and all of this is connected to his status in the U.S., also the kidnapping and torture of his brother, where they're inquiring about Tannin and his connection with the U.S. That's really the clearest motive you're going to find. I want to say one last thing, and that's even if this wasn't the case, he was never given the chance to corroborate his constitutional right of notice and the chance to corroborate his testimony, and that in this circuit under Wren requires remanifestation. What testimony? Are you still referring to this affiliation claim or something else? I'm shifting now to the basis for his denial was an adverse credibility finding. That adverse credibility finding was due to the omission of a 2009 attack, which he didn't provide corroborative evidence for. I thought it included his lies to Customs and Border Patrol agents when they arrested him on the train. That's not correct. That was the case in his first hearing. The BIA then overturned that and said his lies were excusable because he was given the situation, and they said that was clear error. On his second hearing, the only basis of the adverse credibility finding that the BIA mentions is this omission of 2009 attack, and, again, he wasn't given notice or an opportunity to corroborate that, which under Wren v. Holder and the binding circuit. This was the attack where he was burned on his back? Correct. I mean, did he show the judge the burn? He submitted pictures, but the question is not whether he showed it at the hearing. It's whether the judge gave him the opportunity, his constitutional notice and an opportunity to corroborate that, which he could have done had the judge said just that. I don't think he was – he didn't say the problem was the lie, but the problem, whether or not he was burned, but that he suddenly added this dramatic event later into the – he didn't say, I don't know what to believe, so I need corroborative evidence. He said, when you add a dramatic event late in the game that you didn't have in your initial asylum application or anything else, that can be the basis for an adverse credibility determination, and I think our case law supports that. It doesn't require – I'm not sure how corroboration even fits into that. The reason it was – it wasn't the addition of that incident. It was the addition, and there were no facts in there to corroborate that, and that's what the BIA goes into. Okay. I'm out of time. We appreciate your arguments. And the case of Tannen v. Whitaker is submitted.
judges: Tallman, Ikuta, Bough